IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PAUL A. VENTICINQUE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 20-cv-03084 |
| vs. ) | |
| ) | |
| CITY OF CHICAGO DEPARTMENT OF ) | JURY TRIAL DEMANDED |
| AVIATION, ) | |
| ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

Plaintiff, PAUL A. VENTICINQUE, by and through his attorneys, THE HERBERT LAW FIRM, complaining against Defendant, CITY OF CHICAGO DEPARTMENT OF AVIATION, states as follows:

## THE PARTIES

1. The plaintiff in this case is PAUL A. VENTICINQUE and was an employee of the Defendant City of Chicago Department of Aviation, as defined by the ADA.

2. VENTICINQUE is a resident of this jurisdictional district.

3. VENTICINQUE is ex-military, honorably discharged from the U.S. Army during the era of the Second Gulf War.

4. VENTICINQUE injured his shoulder in basic training while in the Army but the injury was never diagnosed and he is not getting a service-connected disability for it.

5. He believes he re-injured the same shoulder when he was in basic training at the Department in July of 2010.

6. VENTICINQUE obtained a judgment against the Department in his prior civil rights claim in which he alleged disability discrimination, perceived disability discrimination and military status discrimination.

7. He prevailed on all counts and was ordered reinstated in a decision by Judge Evans which is attached hereto as Exhibit "A".

8. The defendant is the City of Chicago, Department of Aviation ("Department").

9. At all times relevant to this cause of action, the Department's mission was to ensure safe and efficient travel through O'Hare and Midway International Airports; enhance economic activity and job creation within the City of Chicago and the region; continue to grow Chicago's airports' competitive positions in the global aviation marketplace; provide world class services and amenities in an environment that reflects Chicago's rich, diverse and unique character; and, continue to be the international leader in airport sustainability by integrating environmental best practices into all aspects of the airports.

10. At all times relevant to this cause of action, the Department has continuously been engaged in an industry affecting commerce within the meaning of the ADA.

11. Further, upon information and belief, the Department employs and has employed over five hundred employees. The Department is a state actor, acting under the color of state law.

12. At all relevant times, the Department has been a covered entity under the ADA.

## JURISDICTION

13. Plaintiff, VENTICINQUE brings this action against the Defendant City of Chicago Department of Aviation for violations of the Americans with Disabilities Act of 1990 ("ADA") as amended by the ADA Amendments Act of 2008 (ADAAA"), 42 U.S.C. §§ 12101 to 12213 (collectively, the "ADA"). Plaintiff also brings this action pursuant to Title VII of the Civil Rights

Act of 1964, 42 U.S.C. § 2000(e) et seq. and the Illinois torts of retaliatory discharge and intentional infliction of emotional distress.

14. Jurisdiction over Plaintiff's claims are conferred by 28 U.S.C. § 1331 and § 1343.

15. All conditions precedent to filing suit have been met. Plaintiff timely filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), as required by 42 U.S.C. § 2000(e)-5(e)(1) on December 16, 2019 and was cross-filed with the Illinois Department of Human Rights ("IDHR"). See EEOC Charge of Discrimination attached hereto as Exhibit "B".

16. Exhibit "B" is a true and accurate copy of Plaintiff's charge of discrimination.

17. This lawsuit is filed under the opt-out provisions of the Act, 775 ILCS 5/7A-102(C-1) which allows a complaining party to bypass the investigation set up at the Illinois Department of Human Rights.

18. The United States Department of Justice, Civil Rights Division issued a "right to sue" letter dated April 15, 2021. See DOJ Right to Sue Letter attached hereto as Exhibit "C".

19. Exhibit "C" is a true and accurate copy of the right to sue letter.

20. This action is being filed in court within 90-days of receipt of the DOJ's Right to Sue letter.

## VENUE

21. Venue is proper in this district pursuant to general venue statute, 28 U.S.C. § 1391 because all parties reside in this judicial district and the events pertaining to the claims made in this complaint occurred in this district.

## INTRODUCTION

22. This is a case about an honorably discharged veteran of the military.

23. He is a veteran of the U. S. Army.

24. He was in the Army during the era of the Second Gulf War.

25. He returned home from the service, only to be discriminated against because of his military status.

26. He was literally run out of the Chicago Department of Aviation (the Department) training Academy because he reinjured his shoulder during basic training.

27. This was the same shoulder he had previously injured while undergoing basic training in the Army.

28. On June 28, 2010, PAUL A. VENTICINQUE (VENTICINQUE) began work for the Department as a probationary Aviation Security Officer (ASO).

29. Like all newly hired ASO's, VENTICINQUE was enrolled in the basic Recruit Training Program at the Cook County Sheriff's Police Training Academy.

30. The Cook County Sheriff's Training personnel trained ASO's under the guidance and supervision of Department of Aviation officials, in 2010.

31. The program ran for ten weeks and included training in firearms, basic report writing, traffic, patrol, investigation, criminal and constitutional law, disciplines of psychology, sociology, human relations and defensive tactics.

32. VENTICINQUE disclosed on his application to the Department that he was an Army veteran and that he had injured his shoulder in the Army during basic training.

33. However, all recruits to qualify must get medical clearance from their doctor certifying that they are fit to participate in basic training at the Academy.

34. VENTICINQUE'S doctor certified in writing that he was fit to participate in basic training.

35. On July 2, 2010, VENTICINQUE injured his shoulder while participating in a physical drill at the Academy.

36. He immediately advised his training instructor who excused him from the balance of the drill that day.

37. As the injury was to the same shoulder he injured during basic training in the Army, VENTICINQUE believed it was a re-injury.

38. The next day, July 3, a training supervisor asked the class if anyone had been injured the previous day during physical drills.

39. VENTICINQUE raised his hand.

40. He said he thought he reinjured the same shoulder he injured in the military.

41. He was immediately pulled out of training and scheduled by his Department training supervisor for an appointment with a doctor at MercyWorks.

42. On July 9, 2010, VENTICINQUE saw a MercyWorks doctor who released him to return to work full duty, no restrictions.

43. However, the doctor added, "Due to <u>no</u> MRI Report is not appropriate to state 'rotator cuff tear' in PT."

44. When VENTICINQUE returned to the Academy they would not return him to basic training because they said the Department would not release him to go back.

45. VENTICINQUE then languished at the Academy, allowed to participate in the academic training but withheld from physical training as the Department wrestled with whether they were going to approve him for evaluation by an MRI.

46. The Department claims that VENTICINQUE got into a verbal altercation with one of his fellow recruits on July 14.

47. The recruit allegedly called VENTICINQUE out for what the recruit believed was VENTICINQUE malingering because he was not participating in the physical drills.

4840-1212-7213, v. 1

48. That gave the Department all the excuse it needed to immediately suspend VENTICINQUE on July 14, 2010 and then terminate him on July 16, 2010, allegedly for getting into the verbal altercation.

49. The other recruit was not disciplined.

50. On July 27, 2010, VENTICINQUE filed discrimination charges against the Department alleging he was terminated because of discrimination based on perceived disability (his shoulder), actual disability, the shoulder, and his military status.

51. A trial was held in the matter and on June 6, 2018, ALJ Michael J. Evans, ruled in VENTICINQUE's favor on all counts. See copy of Recommended Liability Determination dated June 6, 2018, attached hereto as Exhibit "A"; Judge Evans' Recommended Order and Decision dated September 17, 2018, attached hereto as Exhibit "D", and the Notice dated November 7, 2018, that the Recommended Order and Decision in the case has become "final," attached hereto as Exhibit "E".

52. In ruling in VENTICINQUE's favor, Judge Evans, put in the following stipulations:

   (a) The Department was ordered to take VENTICINQUE back as an ASO and assign him to basic training once again so that he could "obtain the training necessary to perform the duties of an ASO" [Ex. A at 19];

   (b) "Once [VENTICINQUE] successfully completes his training, [the Department] should immediately place him into an ASO slot with the salary, benefit, and seniority he would have had if he had never been discharged" [Ex. A, at 19];

   (c) "Once [VENTICINQUE] successfully completes his training, [the Department] should be ordered to pay him the sum of $279,897.00 as back pay through the end of the public hearing in this matter; in addition, back pay should continue to accrue in the amount of $3,543.00 per month from the end of the public hearing

        in this matter until Respondent offers Complainant reinstatement to a probationary ASO position" [Ex. A at 19];

53. Predictably, the Department having been embarrassed by VENTICINQUE in court was not going to allow him to complete his training on reinstatement.

54. In November 2018, VENTICINQUE entered a class of recruits with the Department.

55. However, before he even started his training with the Department, everyone there, all the supervisors, all the clerical people, everyone, seemed to know the moment he showed up, who he was and that he was there under Commission order.

56. They all seemed to know he was awarded a judgment that was contingent on him successfully completing his training.

57. They all seemed determined to make sure that he did not successfully complete his training, no matter what.

58. As a result and with rare exception, all of the people associated with the Department made it their business to try and frustrate VENTICINQUE's training at every possible opportunity.

59. They all seemed to make it their mission to drive him out of the Department once again so that the Department could avoid paying him his award.

60. The retaliation took the following form and included some but not all the following intentional retaliatory acts:

    (a) Not informing him of the date he should report to work/training and then accusing him of not reporting;

    (b) Unnecessarily and unreasonably delaying intake which included delaying him getting his mandatory screening, fingerprinting, physical and drug testing;

    (c) Delaying and refusing to issue him his badge;

(d) Not issuing him his bullet-proof vest;

(e) Delaying and refusing to administer testing required for VENTICINQUE to complete the training program such as not giving him his driving test.

(f) Not paying him his judgment amount as required by the prior Judge Evans orders when VENTICINQUE received his graduation certificate and graduated from the ACADEMY;

(g) Not raising his salary to the proper level after VENTICINQUE graduated from the ACADEMY;

(h) Not giving VENTICINQUE his lost seniority when he graduated from the ACADEMY.

61. The retaliation continued after he graduated from the Academy.

62. During VENTICINQUE's "probationary" period after graduation, he always received the least desirable work assignments, was denied necessary equipment, and he was generally treated less favorably that other probationary ASO's with the specific and intentional purpose of trying to get him to resign.

63. The Department assigned people to work with him who were known screw-ups or crazies like the time he was assigned to a female Sergeant known for mentally unstable behavior.

64. She had him, without explanation, drive literally around in circles all night.

65. Another time he was assigned to work with someone who was in trouble for testing positive for use of illegal drugs.

66. He was assigned on numerous occasions the task of driving the perimeter of O'Hare airport which is a roadway that has sensors in it.

67. One false move and the driver sets off the sensors.

68. If drivers set off sensors, they get written up.

8

69. One of the surest ways to get someone written up is to assign them that task because it is almost impossible to drive the perimeter without touching off a sensor.

70. The last straw so to speak was when, on February 11, 2019, they assigned VENTICINQUE to test 42 automated external defibrillators or AEDs.

71. His was to test all 42 of them at O'Hare in a single night.

72. The only problem is that they deliberately did not give him a key to the units to turn the alarms off when tested.

73. He also was not provided protective ear covering to protect his hearing when the AED alarms went off.

74. Each AED he tested went off as part of the test.

75. Once the alarm went off, each AED rang at a volume of up to 120 decibels for up to three minutes.

76. Noise induced hearing loss or damage starts at 110 decibels.

77. At 120 decibels for three minutes, hearing loss and damage was almost guaranteed.

78. If he had the key to these units, he could have turned the alarms off immediately.

79. The result was he literally went deaf in one ear after testing only about half of these units, and he returned to base.

80. He complained to the Sgt. in charge and filled out a work-related accident claim.

81. After going to a hearing specialist, the hearing doctor took him off work.

82. When ASOs are off work due to a work-related injury they are not supposed to have to call in and check in daily.

83. However, this was VENTICINQUE and he was never treated normally.

84. The Department treated VENTICINQUE's hearing loss as not work related.

9

4840-1212-7213, v. 1

85. Therefore, they demanded that he call off work every single day he remained off work following the incident.

86. On one of those occasions, a fellow recruit got lippy with him about why he kept calling in off work.

87. The Department denied his work-related hearing claim and then terminated him on June 25, 2019.

88. The reason given was his verbal argument with the other recruit who got lippy with him over the phone.

89. The real reason was retaliation against VENTICINQUE for having won his underlying charge of disability, perceived disability and military status discrimination trial in 2018, and the Department's determination to drive VENTICINQUE out of the Department to avoid paying him his judgment of $279, 897.00 plus additional back pay since June 25, 2019, plus prejudgment interest and attorney's fees and costs.

## COUNT I
## RETALIATION IN VIOLATION OF THE AMERICAN DISABILITIES ACT
## 42 U.S.C. §§ 12181 et seq.

90. VENTICINQUE adopts and realleges ¶¶ 1-89 as if fully set forth herein.

91. VENTICINQUE was qualified for his position when Defendants fired him.

92. On June 25, 2019 the Department terminated VENTICINQUE for having won his underlying charge of disability, perceived disability and military discrimination trial in 2018, and the Department's determination to drive VENTICINQUE out of the Department to avoid paying him his judgment of $279,897.00 plus additional back pay since June 25, 2019, plus prejudgment interest and attorney's fees and costs.

93. VENTICINQUE engaged in protected activity when he filed discrimination charges against the Department alleging that he was terminated because of discrimination perceived on disability (his shoulder), actual disability, the shoulder, and his military status.

94. The acts complained of above were intentional and willful by the members of the Department.

95. They were taken to frustrate the decision of Judge Evans reinstating VENTICINQUE with full benefits and no loss of seniority.

96. They were taken to frustrate and prevent VENTICINQUE from getting the payment of the award he was entitled to by order.

97. They were designed to terminate VENTICINQUE based on a pretext during his probation period so that he would not be deemed completed in his training and would not be paid or reinstated with full benefits and no loss of seniority.

WHEREFORE, plaintiff PAUL A. VENTICINQUE demands the following:

A. Reinstatement to the Department of Aviation as a full-time, non-probationary ASO with full seniority and no loss of benefits as if he had been employed and at the pay and benefits and rank he would be at the date of the order had he not been terminated from the Department in July of 2010;

B. That he be awarded all lost pay from that time to the present including the full amount awarded by Judge Evans in the prior order;

C. That the Department be required to pay punitive damages or sanctions to VENTICINQUE as a result of the fact that the Department deliberately violated the prior orders of Judge Evans;

D. That the Department be required to pay all Plaintiff's attorney's fees and costs;

E. That this court grant such further and other relief as the court deems fit.

## COUNT II
**RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
**42 U.S.C. §§ 2000e. et seq**

98. VENTICINQUE adopts and realleges ¶¶ 1-97 as if fully set forth herein.

99. VENTICINQUE opposed an unlawful employment practice that is opposing his termination and harassment received during training.

100. VENTICINQUE participated in an activity protected under federal law by filing a discrimination complaint against the Department.

101. The Department subjected VENTICINQUE to an adverse employment action, that is his termination; and, then his subsequent harassment and his subsequent termination after reinstatement.

102. VENTICINQUE was subjected to an adverse employment action of his termination after reinstatement because of his participation in filing his discrimination complaints against the Department and obtaining a favorable award in the underlying complaint filed on July 27, 2010.

WHEREFORE, plaintiff PAUL A. VENTICINQUE demands the following:

A. Reinstatement to the Department of Aviation as a full-time, non-probationary ASO with full seniority and no loss of benefits as if he had been employed and at the pay and benefits and rank he would be at the date of the order had he not been terminated from the Department in July of 2010;

B. That he be awarded all lost pay from that time to the present including the full amount awarded by Judge Evans in the prior order;

C. That the Department be required to pay punitive damages or sanctions to VENTICINQUE as a result of the fact that the Department deliberately violated the prior orders of Judge Evans;

D. That the Department be required to pay all Plaintiff's attorney's fees and costs; and

E. That this court grant such further and other relief as the court deems fit.

## COUNT III
## RETALIATORY DISCHARGE
## ILLINOIS STATE LAW

103. VENTICINQUE adopts and realleges ¶¶ 1-102 as if fully set forth herein.

104. Defendant Department terminated VENTICINQUE, for the second time, on or about June 25, 2019.

105. Defendant Department terminated VENTICINQUE'S employment in retaliation for filing his Illinois Department of Human Right's complaint when previously wrongfully terminated on or about July 27, 2010.

106. VENTICINQUE'S discharge violates a clear mandate of public policy in Illinois as Illinois has a clear public policy prohibiting employers from terminating public employees in retaliation for exercising their rights.

107. As a proximate cause of Defendant Department's conduct, VENTICINQUE suffered pecuniary and compensatory damages including lost back pay, humiliation, damage to reputation and attorney's fees and costs.

WHEREFORE, plaintiff PAUL A. VENTICINQUE demands the following:

A. Reinstatement to the Department of Aviation as a full-time, non-probationary ASO with full seniority and no loss of benefits as if he had been employed and at the pay and benefits and rank he would be at the date of the order had he not been terminated from the Department in July of 2010;

B. That he be awarded all lost pay from that time to the present including the full amount awarded by Judge Evans in the prior order;

C. That the Department be required to pay punitive damages or sanctions to VENTICINQUE as a result of the fact that the Department deliberately violated the prior orders of Judge Evans;

D. That the Department be required to pay all Plaintiff's attorneys' fees and costs.

E. That this court grant such further and other relief as the court deems fit.

## COUNT IV
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## ILLINOIS STATE LAW

108. VENTICINQUE adopts and realleges ¶¶ 1-107 as if fully set forth herein.

109. Based upon the aforesaid facts regarding the Department's position of power over VENTICINQUE'S ability to earn a living and maintain employment, Defendant Department knew or should have known that its actions of unlawfully terminating him twice would cause him severe and emotional distress.

110. That the Department has continued its extreme and outrageous conduct since on or about July 16, 2010, when it terminated VENTICINQUE without justification.

111. That the Department continued to harass VENTICINQUE after he entered the November 2018 class of recruits with the Department upon order from the ALJ Michael J. Evans of November 7, 2018.

112. That VENTICINQUE endured severe emotional distress for over eleven years as a direct and proximate result of the Department's intentional acts of harassment and interference with his ability to earn a living.

WHEREFORE, plaintiff PAUL A. VENTICINQUE demands the following:

A. Reinstatement to the Department of Aviation as a full-time, non-probationary ASO with full seniority and no loss of benefits as if he had been employed and at the pay and

    benefits and rank he would be at the date of the order had he not been terminated from the Department in July of 2010;

B. That he be awarded all lost pay from that time to the present including the full amount awarded by Judge Evans in the prior order;

C. That the Department be required to pay punitive damages or sanctions to VENTICINQUE as a result of the fact that the Department deliberately violated the prior orders of Judge Evans;

D. That the Department be required to pay all Plaintiff's attorneys' fees and costs; and

E. That this court grant such further and other relief as the court deems fit.

### JURY TRIAL DEMANDED

Date: June 8, 2021                                              Respectfully Submitted,

                                                                                   /s/Daniel Q. Herbert
                                                                                   Daniel Q. Herbert

The Herbert Law Firm
206 S. Jefferson, Suite 100
Chicago, IL 60661
(312) 655-7660
Dan.herbert@danherbertlaw.com
Kelly.krauchun@danherbertlaw.com
ARDC #6273940