IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PAUL A. VENTICINQUE, | ) |
|         Plaintiff, | ) Case No. 21-cv-3084 |
| v. | ) Judge Robert M. Dow, Jr. |
| CITY OF CHICAGO DEPARTMENT OF AVIATION, | ) |
|         Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Paul Venticinque ("Plaintiff") brings suit against his former employer, the City of Chicago Department of Aviation ("Department") for retaliation in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12181 et seq. ("ADA") and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000c et seq. ("Title VII"), and retaliatory discharge and intentional infliction of emotional distress in violation of Illinois state law. Currently before the Court is Defendant's motion to dismiss the complaint in part [11]. For the following reasons, Defendant's motion to dismiss [11] is granted in part and denied in part. Plaintiff's Title VII and retaliatory discharge claims are dismissed. Plaintiff's request for punitive damages is stricken. The City of Chicago ("City") shall be substituted as Defendant and the caption shall be amended accordingly. The motion to dismiss is otherwise denied. Plaintiff is given until October 7, 2022 to file an amended complaint, to the extent he can do so consistent with this opinion and Rule 11. See Fed. R. Civ. P. 11. If Plaintiff wishes to stand on the existing complaint, he should contact the Courtroom Deputy so that a status hearing can be set in this matter.

I.      Background

The following facts are taken from the complaint [1] and assumed to be true for purposes of Defendant's motion to dismiss.  See *Zimmerman v. Bornick*, 25 F.4th 491, 493 (7th Cir. 2022). Plaintiff is an honorably discharged veteran of the United States Army.  He began the Department's training academy as a probationary Aviation Security Officer ("ASO") on June 28, 2010.  On July 2, 2010, Plaintiff injured his shoulder during a training drill at the academy.  On July 14, 2010, while Plaintiff was unable to physically participate in training, the Department alleged that Plaintiff got into a verbal altercation with one of his fellow recruits.  Two days later, the Department terminated him for the alleged verbal altercation.  The other recruit allegedly called Plaintiff out for what the recruit believed was Plaintiff malingering because he was not participating in the physical drills, even though that was at the direction of the Department.  The other recruit was not disciplined and Plaintiff was terminated.

On July 27, 2010, Plaintiff filed discrimination charges against the Department with the Illinois Human Rights Commission, alleging that he was terminated because of discrimination based on perceived disability (his shoulder), actual disability (the shoulder), and his military status. See [1-1].  Nearly eight years later, a trial was held in in the matter and ALJ Michael Evans ruled in Plaintiff's favor on all counts.  In accordance with ALJ Evans' ruling, the Department was ordered to take Plaintiff back as an ASO and assign him to basic training once again so that he could obtain the training necessary to perform the duties of an ASO.  ALJ Evans also ordered that once Plaintiff successfully completed his training, the Department should immediately place him into an ASO slot with the salary, benefits, and seniority he would have had if he had never been discharged and pay him more than $279,000 in back pay, which would continue to accrue until he was reinstated as a probationary ASO.

2

In November 2018, Plaintiff entered a class of recruits with the Department. Plaintiff alleges that "before he even started his training with the Department, everyone there, all the supervisors, all the clerical people, everyone, seemed to know the moment he showed up, who he was and that he was there under Commission order." [1] at 7. "They all seemed to know he was awarded a judgment that was contingent on him successfully completing his training," and "[t]hey all seemed determined to make sure that he did not successfully complete his training, no matter what." *Id*. Plaintiff alleges that the Department, through its employees, retaliated against him on multiple occasions, making it clear its mission was to drive him out of the Department to avoid paying him his award.

On February 11, 2019, the Department assigned Plaintiff to test 42 automated external defibrillators or AEDs, all in a single night at O'Hare Airport. Plaintiff alleges that the Department deliberately did not give him a key to the units to turn the alarms off when tested and did not provide him with ear coverings to protect his hearing when the AED alarms went off. Each AED rang at a volume of up to 120 decibels for up to three minutes. If Plaintiff had the keys, he could have turned the alarms off immediately. After testing about half of the units, Plaintiff lost his hearing in one ear. He complained to his Sergeant and filled out a work-related injury form. However, the Department did not treat Plaintiff's hearing loss as work-related and forced him to call off work every day that he remained off following the incident, even though this was not standard policy. The Department subsequently denied his work-related hearing claim and then terminated him on June 25, 2019.

Plaintiff alleges that the Department's actions were all done in retaliation for having won the trial in his underlying charge of disability, perceived disability and military status discrimination and to avoid paying back pay. Plaintiff filed a charge of discrimination with the

EEOC on December 16, 2019 and the United States Department of Justice issued a "right to sue" letter on April 15, 2021. Plaintiff filed his complaint with this Court on June 8, 2021. It contains four counts, for retaliation in violation of the ADA (Count I) and Title VII (Count II), retaliatory discharge (Count III), and intentional infliction of emotional distress (Count IV).

**II.      Legal Standard**

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When evaluating the complaint, the Court must "treat all allegations as true" and "draw all reasonable inferences in the plaintiff's favor." *Zimmerman*, 25 F.4th at 493.

To survive a motion to dismiss, "the complaint must 'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Flores v. City of South Bend*, 997 F.3d 725, 728-29 (7th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is plausible if it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Seventh Circuit has interpreted this to require the plaintiff to "'give enough details about the subject-matter of the case to present a story that holds together.'" *West Bend Mutual Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016) (quoting *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010)). "In other words, the court will ask itself *could* these things have happened, not *did* they happen." *Id.* At the end of the day, "the plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common

4

sense.'" *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011); *Spearman v. Elizondo*, 230 F. Supp. 3d 888, 892-93 (N.D. Ill. 2016). It is proper for the Court to "consider, in addition to the allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (citing *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir.2012)); see also Fed. R. Civ. P. 10(c).

### III. Analysis

#### A. Retaliatory Discharge

Defendant argues that Plaintiff's retaliatory discharge claim is preempted by the Illinois Human Rights Act, 775 ILCS 5, *et seq*. ("IHRA"). The Court agrees and will dismiss the retaliatory discharge claim.

In Count III of the complaint, Plaintiff alleges that Defendant terminated him "in retaliation for filing his Illinois Department of Human Right's complaint when previously wrongfully terminated on or about July 27, 2010." [1] at 13. Plaintiff alleges that this "violates a clear mandate of public policy in Illinois as Illinois has a clear public policy prohibiting employers from terminating public employees in retaliation for exercising their rights." *Id*.

According to Defendant, Plaintiff's retaliatory discharge claim is barred by the IHRA, which sets out an administrative procedure for certain civil rights claims and specifies that "'no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act.'" *Hussaini v. G4S Secure Solutions (USA) Inc.*, 379 F. Supp. 3d 679,

5

683 (N.D. Ill. 2019) (quoting 775 ILCS 5/8-111(D)). "To draw the line between preemption versus not, the Illinois Supreme Court has boiled down the inquiry as follows: whether a court 'may exercise jurisdiction over a tort claim depends on whether the tort claim is inextricably linked to a civil rights violation such that there is no independent basis for the action apart from the Act itself.'" *Richards v. U.S. Steel*, 869 F.3d 557, 564 (7th Cir. 2017) (quoting *Maksimovic v. Tsogalis*, 687 N.E.2d 21, 24 (Ill. Sup. 1997)). "Put another way, the key to preemption is not whether the facts that support a common law tort claim (like intentional infliction of emotional distress) would also support a claim under the Human Rights Act, but rather whether the plaintiff can prove the elements of the tort 'independent of any legal duties created by the Illinois Human Rights Act.'" *Id.*; see also *Hernandez v. Cook Cnty. Sheriff's Office*, 76 F. Supp. 3d 739, 744 (N.D. Ill. 2014); *Aleman v. McDonald's Corp.*, 2021 WL 3418857, at *5 (N.D. Ill. Aug. 5, 2021).

Under Illinois common law, "'an employer may discharge an employee-at-will for any reason or for no reason … , except for when the discharge violates a clearly mandated public policy.'" *Turner v. Memorial Med. Ctr*, 911 N.E.2d 369, 374 (Ill. Sup. 2009) (quoting *Barr v. Kelso-Burnett Co.*, 478 N.E.2d 1354, 1356 (Ill. Sup. 1985)). Thus, a plaintiff bringing a common law claim for retaliatory discharge must show: "'(1) the employer discharged the employee, (2) in retaliation for the employee's activities, and (3) that the discharge violates a clear mandate of public policy.'" *Perez v. Staples Contract & Commercial LLC*, 31 F.4th 560 (7th Cir. 2022) (quoting *Turner v. Mem'l Med. Ctr.*, 911 N.E.2d 369, 374 (Ill. Sup. 2009)). To satisfy the third element, Plaintiff "must point to the specific source of the clearly mandated public policy." *Hussaini*, 379 F. Supp. 3d at 683.

Plaintiff does not point to a specific source of clearly mandated public policy, relying instead on the vague allegation that there is "a clear public policy prohibiting employers from

6

terminating public employees in retaliation for exercising their rights." [1] at 13. However, the source of this public policy is the IHRA, which makes it a "civil rights violation" to "[r]etaliate against a person because he or she has opposed that which he or she reasonably and in good faith believes to be unlawful discrimination ... or because he or she has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this Act." 775 ILCS 5/6–101(A); see also *Hernandez v. Cook County Sheriff's Office*, 76 F. Supp. 3d 739, 743 (N.D. Ill. 2014). "Unlawful discrimination" is defined to include discrimination based on "disability" and "military status," like Plaintiff alleges in his complaint. 775 ILCS 5/1–103(Q). Since "the IHRA is the sole public policy basis for [Plaintiff's] retaliatory discharge claim," Plaintiff cannot establish the necessary elements of the tort independent of any legal duties created by the IHRA and therefore the retaliatory discharge claim is preempted. *Hussaini*, 379 F. Supp. 3d at 683 (plaintiff's retaliatory discharge claim preempted by the IHRA where "the only public policy that [plaintiff] identifies … is the IHRA itself"); see also *Shamim v. Siemens Indus., Inc.*, 854 F. Supp. 2d 496, 511 (N.D. Ill. 2012) ("the basis for a claim of retaliatory discharge where the plaintiff complains of discriminatory treatment are found in the policies that underlie the IHRA, and the claim is therefore preempted by the IHRA").

    B.    **Intentional Infliction of Emotional Distress**

        1.    **Illinois Tort Immunity Act**

Defendant argues that Plaintiff's IIED claim is time-barred pursuant to the Illinois Local Government and Governmental Employee Tort Immunity Act, 745 ILCS 10/8-101(a) ("Tort Immunity Act") to the extent that it accrued more than one year prior to the filing of his original complaint in the Cook County Circuit Court, which was dismissed for want of prosecution and refiled here. The Court is not persuaded and denies this portion of the motion to dismiss.

7

The parties are in apparent agreement that Plaintiff filed his complaint in this action less than a year after the original case had been dismissed in the Cook County Circuit Court, and therefore Plaintiff can bring new claims that arose from the same transaction alleged in the prior action, so long as those claims would have been timely if brought in the prior action. See [12] at 8. The Tort Immunity Act provides that no civil action may "be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued." 745 ILCS 10/8-101(a); see also *Huon v. Mudge*, 597 F. App'x 868, 878 (7th Cir. 2015). According to Defendant, "[t]he only allegation set forth in Plaintiff's IIED claim that occurred within one year of the filing of his May 6, 2020 State Court Complaint is … his June 25, 2019 termination." [12] at 8. His other allegations—that Defendant unlawfully terminated him in 2010 and continued to harass him after he entered the November 2018 class, and that the City deliberately subjected him to loud alarms on February 11, 2019 and caused him hearing loss—occurred more than a year before May 6, 2020. Defendant maintains that Plaintiff's IIED claim is barred to the extent it is based on any of these allegations.

Defendant's motion to dismiss does not discuss when an IIED claim "accrues." In Illinois, IIED "is considered a 'continuing tort' which 'accrues, and the statute of limitations begins to run, at the time the last injurious act occurs or the conduct is abated.'" *Hill v. City of Chicago*, 2007 WL 1424211, at *6 (N.D. Ill. May 10, 2007) (quoting *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 89 (Ill. Sup. 2003)); see also *Renaud v. City of Chicago*, 2013 WL 2242304, at *5 (N.D. Ill. May 21, 2013); *Zitzka v. Village of Westmont*, 743 F. Supp. 2d 887, 905 (N.D. Ill. Sept. 28, 2010). "The doctrine of continuing violation, as the Illinois Supreme Court has held, 'does not involve tolling the statute of limitations because of delayed or continuing injuries, but instead involves viewing

8

the defendant's conduct as a continuous whole for prescriptive purposes.'" *Evans v. City of Chicago,* 434 F.3d 916, 934 (7th Cir.2006), *overruled in part on other grounds by Hill v. Tangherlini*, 724 F.3d 965, 967 n.1 (7th Cir. 2013); see also *Taylor v. Board of Ed. of City of Chicago*, 10 N.E.3d 383, 396 (Ill. App. 2014). Thus, "the statute of limitations is only held in abeyance until the date of the last injury suffered or when the tortious acts cease." *Evans*, 434 F.3d at 934; see also *Feltmeier*, 798 N.E.2d at 89; *Hill*, 2007 WL 1424211, at *6.

Plaintiff explains that Defendant's extreme and outrageous conduct began in July 2010, when he was terminated because of discrimination based on his perceived disability and military status, and continued through his second termination in June 2019. The complaint's allegations are sufficient to plausibly conclude that all of the conduct complained about—or at least the conduct occurring from the time Judge Evans issued his decision in 2018—is part of the same continuing violation. The complaint shows that Plaintiff filed his discrimination charges within a few weeks of his first termination in July 2010, and that matter was pending until June 2018, when ALJ Evans ruled in his favor and ordered Defendant to take Plaintiff back as an ASO so he could complete basic training. See [1] at 6. The complaint outlines the retaliation Plaintiff allegedly faced even before he began basic training and how everyone in the Aviation Department "seemed determined to make sure that he did not successfully complete his training, no matter what." [1] at 8-9. After Plaintiff graduated from basic training, the discrimination allegedly continued, with Defendant failing to pay him the judgment ordered by Judge Evans, giving him the least desirable work assignments, denying him necessary equipment, and generally treating him less favorably than other ASOs. See *id*. And in February 2019, Defendant allegedly caused him hearing loss by requiring him to test defibrillator alarms without giving him protective equipment or the key to turn the alarms off. When Plaintiff was off work due to hearing loss, Defendant required him to

9

call in daily (contrary to policy), and then fired him on the pretext that he had a verbal argument with another recruit who requested why he kept calling in off work. See [1] at 9-10.

Taken together, these allegations are sufficient to plausibly suggest that Defendant engaged in repeated behavior of a similar nature, *Taylor*, 10 N.E.3d at 396, causing Plaintiff severe emotional distress. See *id.* (trial court did no abuse discretion denying defendant board of education's motion in limine to exclude evidence of allegedly retaliatory acts that occurred more than one year before plaintiff, a former assistant principal, filed claim under Whistleblower Act, where evidence showed that, for over two years, principal and other city board of education employees engaged in continuous course of conduct against assistant principal after he reported another teacher abusing a student; prior to report, assistant principal received satisfactory evaluations, and following report, assistant principal's performance rating was lowered, he was demoted, and was he was subjected to repeated, questionable disciplinary censure and suspension, culminating in nonrenewal of his contract). Although the Court is skeptical that the recovery period could ever extend all the way back to 2010, the exact cut-off date need not be resolved at this early stage of the case. Therefore, this portion of Defendant's motion to dismiss is denied.

    **2.**    **Preemption**

As with the retaliatory discharge claim, Defendant asserts that Plaintiff's IIED claim is preempted by the IHRA. Defendant's argument is premised on an assumption that the only allegation from Plaintiff's IIED claim that is not time-barred is his June 25, 2019 termination. See [12] at 9. For the reasons explained above, the Court rejects that argument. Since Defendant's motion does not address the other allegations supporting the IIED claim, Defendant has waived any argument that a claim based on these allegations would be preempted by the IHRA.

The argument would appear to be a nonstarter in any event. Unlike with his retaliatory discharge claim, Plaintiff "can prove the elements of intentional infliction of emotional distress independent of legal duties furnished by the IHRA." *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 604 (7th Cir. 2006). In addition, unlike the discrimination-based claims, Defendant's alleged actions, if true, could "constitute tort no matter what its motives were." *Id*. A successful IIED claim requires proof that "(1) the defendant's conduct was truly extreme and outrageous; (2) the defendant intended to inflict severe emotional distress (or knew that there was at least a high probability that its conduct would cause severe emotional distress); and (3) the defendant's conduct did in fact cause severe emotional distress." *Richards v. U.S. Steel*, 869 F.3d 557, 566 (7th Cir. 2017) (citing *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 80 (Ill. Sup. 2003)). Plaintiff alleges that Defendant's actions were wrongful because they intentionally caused him emotional distress, not because they were discriminatory. Therefore, her claim for IIED is not preempted. *Id.* (citing *Krocka v. City of Chicago*, 203 F.3d 507, 516-17 (7th Cir. 2000)) (employee's IIED claim against employer, which was based on allegations that employer created impossible deadlines, set up obstacles to her performance of her job, and sabotaged her work, was not preempted by the IHRA because alleged conduct that could constitute a tort independent of any duties not to discriminate against employees).

  C.  **Title VII**

To prevail on a Title VII retaliation claim, Plaintiff must show that: "(1) he engaged in an activity protected by the statute; (2) he suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action." *Lewis v. Wilkie*, 909 F.3d 858, 866 (7th Cir. 2018). Defendant moves to dismiss the Title VII claim because retaliation for filing

11

a charge of discrimination based on disability or military status is not actionable under Title VII. The Court agrees and will dismiss the Title VII claim.

"Title VII only covers unlawful employment practices and retaliation on the basis of an individual's 'race, color, religion, sex, or national origin.'" *Tarpley v. City Colleges of Chicago*, 87 F. Supp. 3d 908, 913 (N.D. Ill. 2015) (quoting 42 U.S.C. § 2000e–2(a)(1)). "Disability does not fall under any of these categories but instead is protected by its own separate statute, the ADA," *id.* under which Plaintiff also seeks recovery. Plaintiff cannot proceed on a Title VII retaliation claim based on her ADA-protected activity.

Likewise, military status does not fall under Title VII. Claims for discrimination based on military status fall under the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. § 4311 ("USERRA"). Under USERRA, "[a] person who … has performed … service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that … performance of service[.]" *Id.* § 4311(a). An employer also "may not discriminate in employment against or take any adverse employment action against any person because such person … has taken an action to enforce a protection afforded" by USERRA. *Id.* § 4311(b); see also *Bello v. Village of Skokie*, 151 F. Supp. 3d 849, 862 (N.D. Ill. 2015). The Court expresses no opinion on whether Plaintiff may be able to state a viable claim for USERRA discrimination or retaliation, but will give Plaintiff until October 7, 2022 to file an amended complaint if he believes he can do so consistent with Rule 11.

### D. ADA Retaliation

To prevail on a claim for retaliation under the ADA, Plaintiff must prove that: (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action; and (3) there was a causal connection between the two. See *Greengrass v. Int'l Monetary Sys. Ltd.*, 776 F.3d 481, 485 (7th Cir. 2015); *Dickerson v. Bd. of Trs. of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011); *Milsap v. City of Chicago*, 2018 WL 488270, at *5 (N.D. Ill. Jan. 19, 2018). Defendant argues that Plaintiff's ADA retaliation claim is time-barred to the extent it accrued more than 300 days prior to the date he filed his Retaliation Charge with the EEOC. The Court concludes that this issue cannot be resolved on a motion to dismiss and therefore denies this part of Defendant's motion.

"[T]he ADA adopts Title VII's procedures in requiring, before an employee files a lawsuit, that the employee first file a timely administrative charge with the EEOC and then receive a right-to-sue notice from the EEOC." *Elzeftawy v. Pernix Group, Inc.*, 477 F. Supp. 3d 734, 757 (N.D. Ill. 2020) (citing 42 U.S.C. § 12117(a); 42 U.S.C. § 2000e-5; *E.E.O.C. v. Harris Chernin, Inc.*, 10 F.3d 1286, 1288 n.3 (7th Cir. 1993)). The charge must be filed within 300 days of the alleged unlawful employment practice. *Id.* Failure to file a timely charge is an affirmative defense, see *Laouini v. CLM Freight Lines, Inc.*, 586 F.3d 473, 475 (7th Cir. 2009), and therefore Plaintiff was not required to anticipate it in the complaint. See *Milchtein v. Milwaukee County*, 42 F.4th 814, 822 (7th Cir. 2022). Nonetheless, dismissal is proper when the complaint's allegations establish that the claim is untimely. See *Gress v. Commonwealth Edison Co.*, 559 F. Supp. 3d 755, 764 (N.D. Ill. 2021).

Plaintiff filed his Retaliation Charge on December 16, 2019. See Exhibit B to Complaint. 300 days prior to December 16, 2019 is February 19, 2019. Defendant argues that, to the extent

13

Plaintiff alleges that he was retaliated against prior to that date (including the hearing loss incident), his claim is time-barred. Relying on the continuing violation doctrine, Plaintiff argues that "so long as one act of harassment occurs within the statutory time period, all prior acts that are part of the same harassment pattern are actionable." [19] at 10 (citing *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 102–03 (2002)). In *Morgan*, the Supreme Court held that "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." *Morgan*, 536 U.S. at 105. "*Morgan* taught that, in general, 'the entire hostile work environment encompasses a single unlawful employment practice,' but cautioned that acts bearing 'no relation' to one another would belong to separate employment practices." *Ford v. Marion County Sheriff's Office*, 942 F.3d 839, 852 (7th Cir. 2019) (quoting *Morgan*, 536 U.S. at 117-18).

Defendant argues that *Morgan* does not apply because Plaintiff does not allege a hostile work environment claim. See [20] at 7. But one type of "adverse employment action" that supports a retaliation claim is a hostile work environment. See *Barton v. Zimmer, Inc.*, 662 F.3d 448, 453-54 (7th Cir. 2011) ("Adverse employment actions for purposes of the federal antidiscrimination statutes generally fall into three categories: (1) termination or reduction in compensation, fringe benefits, or other financial terms of employment; (2) transfers or changes in job duties that cause an employee's skills to atrophy and reduce future career prospects; and (3) *unbearable changes in job conditions, such as a hostile work environment* or conditions amounting to constructive discharge." (emphasis added)); see also *Koty v. DuPage County*, 900 F.3d 515, 520 (7th Cir. 2018); *Burrell v. United Parcel Service, Inc.*, 163 F. Supp. 3d 509, 524–25 (N.D. Ill. 2016). The complaint's allegations are sufficient to plausibly suggest that Defendant retaliated

14

against Plaintiff for winning his underlying charge of disability and military status discrimination both by subjecting him to a hostile work environment and, ultimately, by terminating him. Therefore, the continuing violation doctrine may apply to Plaintiff's ADA retaliation claim and Defendant is not entitled to dismissal based on the 300-day charge filing requirement.

### E.  Proper Defendant

Defendant moves to dismiss the City of Chicago Department of Aviation as a Defendant on the basis that it is not a distinct suable entity from the City of Chicago.  In response, Plaintiff explains that "[t]o the extent that the caption in this matter identifies only the City of Chicago Department of Aviation, Plaintiff's intent was to name the Commissioner of the Department of Aviation, Ms. Jamie Rhee, and the City of Chicago as Defendants." [19] at 11.  Plaintiff "requests that he be granted leave, instanter, to amend his complaint to reflect the same." *Id*.  The parties are in apparent agreement that the City is a proper Defendant, and therefore the Court will substitute the Department for the City as Defendant.

Defendant objects to adding Commissioner Rhee.  Defendant explains that, to the extent Plaintiff seeks leave to add Commissioner Rhee as a Defendant in her official capacity, that would be the same as suing the City, which he is already doing.  See [20] at 9.  And to the extent Plaintiff seeks to sue the Commissioner in her individual capacity, the ADA does not impose individual liability, see *Silk v. City of Chicago*, 194 F.3d 788, 797 n.5 (7th Cir. 1999); *Aku v. Chicago Bd. of Ed.*, 290 F. Supp. 3d 852, 860-61 (N.D. Ill. 2017), and the complaint does not allege any facts suggesting that Commissioner Rhee had any involvement in the acts that form the basis for Plaintiff's IIED claim.  See *id*.  The Court is inclined to agree with Defendant's arguments, but since Plaintiff has not had a chance to respond to Defendant's "futility" arguments and the Court is already granting Plaintiff leave to file an amended complaint to address other issues, Plaintiff

15

should use that opportunity to identify the proper defendant or defendants and add any necessary factual allegations concerning their role in the alleged mistreatment of Plaintiff.

### F. Punitive Damages

Defendant moves to strike Plaintiff's request for punitive damages on the basis that punitive damages are not recoverable from a municipal entity. Plaintiff responds that "If a plaintiff pleads sufficient facts to establish willful and wanton conduct, most immunities under the Tort Immunity Act will not apply." [19] at 12. However, Plaintiff cites no authority for this general proposition or the more specific proposition that punitive damages are recoverable from a municipal entity that loses an ADA or IIED claim (the two claims that will be surviving Defendant's motion to dismiss).

Punitive damages are not available from a municipality for either claim. 42 U.S.C. § 1981a(b)(1) "exempts government agencies from judgments for punitive damages … with respect to … ADA claims." *Blalock v. Illinois Dep't of Human Services*, 349 F. Supp. 2d 1093, 1097 (N.D. Ill. 2004); cf. *Donald v. City of Chicago*, 539 F. Supp. 3d 912, 922 (N.D. Ill. 2021) (same for Title VII and § 1983 claims). And under the Illinois Tort Immunity Act, which applies to the IIED claim, "a local public entity is not liable to pay punitive or exemplary damages in any action brought directly or indirectly against it by the injured party or a third party." 745 ILCS 10/2-102; see also *Martinez v. Cook County Sheriff's Office*, 89 N.E.3d 995, 1001–02 (Ill. App. 2017).

### IV. Conclusion

For these reasons, Defendant's motion to dismiss [11] is granted in part and denied in part. Plaintiff's Title VII and retaliatory discharge claims are dismissed. Plaintiff's request for punitive damages is stricken. The City of Chicago ("City") shall be substituted as Defendant and the caption shall be amended accordingly. The motion to dismiss is otherwise denied. Plaintiff is

16

given until October 7, 2022 to file an amended complaint, to the extent he can do so consistent with this opinion and Rule 11. See Fed. R. Civ. P. 11. If Plaintiff wishes to stand on the existing complaint, he should contact the Courtroom Deputy so that a status hearing can be set in this matter.


Dated: September 7, 2022

                                            Robert M. Dow, Jr.
                                            United States District Judge